| | | |
|---|---|---|
| JAMES N. STRADER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3: 09-62-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| KENTUCKY DEPARTMENT OF FISH | ) | |
| AND WILDLIFE RESOURCES, | ) | |
| JONATHAN W. GASSETT, individually | ) | |
| and in his official capacity as | ) | |
| Commissioner of the Kentucky | ) | **MEMORANDUM OPINION** |
| Department of Fish and Wildlife | ) | **AND ORDER** |
| Resources, and JOHN DOES 1-10, | ) | |
| currently unknown employees, officers, | ) | |
| and agents of the Kentucky Department of | ) | |
| Fish and Wildlife Resources, in their | ) | |
| individual and official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of motions to dismiss filed by Defendant

Jonathan W. Gassett, individually, ("Gassett") [Record No. 5] and Defendants Kentucky

Department of Fish and Wildlife Resources ("KDFWR," "the Department," or "the agency");

Jonathan W. Gassett in his official capacity as Commissioner of the Kentucky Department of

Fish and Wildlife Resources; and John Does 1-10, unknown employees, officers, and agents of

the Kentucky Department of Fish and Wildlife Resources, in their official capacities

(collectively, "the official defendants") [Record No. 6].  The defendants argue that Plaintiff

James N. Strader's Complaint should be dismissed under Federal Rule of Civil Procedure

12(b)(6) for failure to state a claim. They further contend that the Complaint should be dismissed because they are entitled to immunity. For the reasons discussed below, each motion to dismiss will be granted, in part, and denied, in part.

## I.     BACKGROUND

The facts set forth in the Complaint are as follows: Strader is a well-known journalist who covers issues related to hunting and fishing in Kentucky. He hosts a weekly radio program, "Outdoors with Jim Strader," which has been on the air for approximately twenty years. Until 2010, he held the Jim Strader Hunting and Fishing Expo ("the Expo") each February in Louisville, Kentucky. Prior to Gassett's appointment as Commissioner, KDFWR employees were regular guests on Strader's radio show, and Strader provided the Department with free booth space at the Expo, where KDFWR sold hunting and fishing licenses and provided information to Expo attendees.

After Gassett's appointment as Commissioner, Strader began to investigate various alleged improprieties at KDFWR. And he reported his findings on his radio show. Following a show during which Gassett called in to support a person whose nomination to the Fish and Wildlife Commission Strader had questioned, Gassett asked to meet with Strader privately. During their meeting, Gassett warned Strader that if he continued to criticize KDFWR, the agency would no longer support the Expo or Strader's radio show. Nevertheless, Strader remained critical of KDFWR, investigating and reporting questionable practices at the agency. In particular, Strader criticized KDFWR's use of Telecheck, a system whereby hunters report their kills via telephone. Strader was concerned that Telecheck facilitated poaching and over-

harvesting, and his examination of Telecheck data appeared to validate those concerns. Strader

reported the results of his investigation on his radio show.

Following those reports, KDFWR discontinued its support for Strader's radio show and

Expo. In March 2008, the Department launched a competing radio show that aired on the same

day and at the same time as Strader's show. Prior to the 2009 Strader Expo, Gassett publicly

declared, "Not only will [KDFWR] not be at his expo, but I have been tempted to go to WHAS

[radio] to buy Strader out and get rid of him once and for all, I've got $100,000 to do it."

[Record No. 1, p. 10 ¶ 61] KDFWR did not participate in Strader's Expo, but instead sponsored

a competing expo. In the February 2009 Kentucky Fish & Wildlife Commissioner's Newsletter,

Gassett, in response to a reader inquiry regarding KDFWR's absence from the Strader Expo,

stated,

> Recently Mr. Strader publicly maligned hard-working department professionals.
> He questioned their integrity by accusing them of fabricating deer kill data in
> defense of Telecheck, the most efficient and accurate hunter data collection
> system in department history.
> . . . .
> In light of these baseless personal attacks, I chose not to ask some of the nation's
> preeminent wildlife professionals to support Mr. Strader's radio show or his expo.

[Record No. 1-6, p. 2]

Strader asserts claims under 42 U.S.C. § 1983, alleging that the defendants violated his

rights of free speech and freedom of the press under the United States and Kentucky

Constitutions (Count One) and imposed unconstitutional conditions upon his exercise of those

rights (Count Two). He further alleges that he was denied equal protection (Count Three) and

deprived of property interests (Count Four) and liberty interests (Count Five) without procedural

due process.  Finally, Strader alleges defamation (Count Six) and intentional interference with prospective contractual relations (Count Seven) under state law.  He seeks injunctive relief prohibiting the Defendants  from

> instructing KDFWR employees not to participate in [his] Expo . . . [or his] radio show;  .  .  .  funding, sponsoring or promoting competing outdoors expositions . . . [or] radio shows; . . . preconditioning KDFWR and its employees['] involvement/participation in the Strader Expo or radio show upon Mr. Strader's agreement to only portray KDFWR, its officials or employees in a positive manner; . . . treating Mr. Strader, the Strader Expo or Mr. Strader's radio show in a manner differently from other similarly situated individuals, outdoors expositions or radio shows; and . . . further harassing Mr. Strader by arbitrarily targeting him for inspections or investigations without probable cause.

[*Id.*, p. 26]  Strader also seeks damages for the emotional and economic injury he claims to have suffered.

## II.    ANALYSIS

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded factual allegations.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  The Supreme Court explained in *Iqbal* that

> [t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* (citations and internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" under Rule 12(b)(6). *Id.*

### A. Kentucky Constitution

In addition to the First and Fourteenth Amendments, Counts One through Five allege violations of Strader's rights under the Kentucky Constitution. The Sixth Circuit has clearly stated, however, that "a claimed violation of a state constitutional right is not cognizable under § 1983." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005). Thus, to the extent Strader's § 1983 claims are based on alleged violations of his rights under the Kentucky Constitution, those claims are barred.

### B. Immunity Issues

### 1. Eleventh Amendment Immunity

Strader concedes that his claims against KDFWR are barred by the Eleventh Amendment. [Record No. 14, p. 25] *See Thiokol Corp. v. Dep't of Treasury, Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993) ("[Eleventh Amendment immunity] bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments . . . ."). Strader likewise acknowledges that he may pursue only injunctive relief against the official defendants. [*Id.*, p. 25-26] *See Thiokol Corp.*, 987 F.2d at 381 ("The amendment also bars suits for monetary relief against state officials sued in their official capacity. However, the amendment does not preclude actions against state officials sued in their official capacity for prospective injunctive or declaratory relief." (citing *Ex Parte Young*, 209 U.S. 123 (1908))). The Eleventh Amendment

further bars Strader's state-law claims against the official-capacity defendants. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("*Young* and *Edelman* [*v. Jordan*, 415 U.S. 651 (1974)] are inapplicable in a suit against state officials on the basis of state law."). Thus, the only claims remaining against the official defendants are Counts One through Five, and only to the extent Strader seeks injunctive relief.

## 2. Qualified Immunity

Gassett argues that he is entitled to qualified immunity with respect to Strader's retaliation claim. [*See* Record No. 5, p. 21-25] Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009). When the defense of qualified immunity is raised, the plaintiff must show that: (1) the official's conduct violated a constitutional right, and (2) the constitutional right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The two prongs of the *Saucier* test need not be addressed in that order, however. *See Pearson*, 129 S. Ct. at 818.

Here, the parties primarily dispute whether Strader alleges violation of a clearly established right. Strader addressed this issue preemptively in his Complaint, citing *McBride v. Village of Michiana*, 100 F.3d 457, 462 (6th Cir. 1996), for the proposition that at the time of the events described, "the decisional law in this circuit and throughout the United States clearly established that retaliating against a journalist for reporting upon or disagreeing with the polices or practices of the government, its officials or agencies constituted a violation of fundamental

First Amendment Rights." [Record No. 1, p. 13 ¶ 75] Gassett makes no serious argument to the contrary, instead attempting to frame the alleged constitutional right as a right of access to KDFWR and pointing to uncertainty in the law surrounding right-of-access cases. [*See* Record No. 5, p. 24; Record No. 16, p. 9]

However, Strader's Complaint clearly states that the right allegedly violated by the defendants was his First Amendment right to "express disagreement with policies and practices of the government, its agencies and officials," and to "publicly report upon questionable policies and practices . . . without fear of retaliation." [Record No. 1, p. 15 ¶¶ 84-85] Such a right unquestionably exists: the Sixth Circuit noted in *McBride* that "[b]oth the Supreme Court and [the Sixth Circuit] have . . . consistently recognized that retaliation by public officials against the exercise of First Amendment rights is itself a violation of the First Amendment." 100 F.3d at 460-61 (internal quotation marks omitted). Moreover, the *McBride* court found that at the time of the retaliatory acts alleged in that case, "Supreme Court and Sixth Circuit precedent had clearly established that retaliation aimed at chilling fundamental rights was improper." *Id.* at 461. The court cautioned, however, that the defendants could not be held liable for exercising their own First Amendment rights. *Id.* at 462. It therefore directed the district court to "differentiate between those alleged improprieties by the defendants that constitute protected expressions of the defendants' own ideas and positions and those allegations that involve intimidation, harassment, and retribution directed toward McBride solely to punish her for choosing to exercise" her right of free speech. *Id.*

Strader alleges that the defendants retaliated against him by: (1) refusing to participate in his radio show and Expo; (2) actively promoting a competing radio show and expo; and (3) "orchestrating a continuing campaign to harass and disparage" him. [Record No. 1, p. 15-16 ¶ 89] To the extent Strader's retaliation claim is based on the defendants' decision to cease speaking to him or associating themselves with his Expo, it fails. Such actions, although taken in response to Strader's protected criticism of KDFWR and its officials, constituted an exercise of the defendants' own First Amendment rights. *See McBride*, 100 F.3d at 462; *see also McBride v. Village of Michiana*, No. 4:92-CV-155, 1998 U.S. Dist. LEXIS 6082, at *29 (W.D. Mich. Apr. 2, 1998) (agreeing with the defendant that its instructions to village employees not to talk to the plaintiff amounted to an exercise of its own "First Amendment right not to speak with the press"). The allegations in paragraph 88 of the Complaint, therefore, cannot support Strader's retaliation claim.

The remainder of Strader's retaliation claim does assert a violation of a clearly established constitutional right. Whereas Gassett's refusal to allow KDFWR employees to appear on Strader's radio show or at the Expo amounted to a "protected expression[] of [his] own . . . positions" in response to Strader's criticism, paragraphs 86, 87, and 89 of Strader's Complaint describe "intimidation, harassment, and retribution directed toward [Strader] solely to punish [him] for" criticizing KDFWR. *McBride*, 100 F.3d at 462. Thus, Gassett is not entitled to qualified immunity with respect to the acts alleged in those paragraphs.

### C.    Statute of Limitations

The defendants further contend that Strader's § 1983 claims are barred by the statute of limitations. It is undisputed that the applicable limitations period is one year. *See Hall v. Spencer Cnty., Ky.*, 583 F.3d 930, 933 (6th Cir. 2009) ("For claims under Section 1983, the Court applies the statute of limitations for personal-injury tort actions in the state where the cause of action originated. Under Kentucky law, personal-injury claims must be filed within one year of the tort." (citations omitted)). According to the defendants, Strader's § 1983 claims accrued more than one year prior to the filing of the Complaint on December 14, 2009. Gassett maintains that Strader's retaliation claim arose out of their alleged meeting, which occurred sometime before March 2008. [*See* Record No. 5, p. 11] The official defendants, meanwhile, argue that the March 2008 launch of KDFWR's competing radio show was the beginning of the alleged retaliation, and that Strader knew or should have known of his § 1983 claims at that time. [*See* Record No. 6-2, p. 10] "At a minimum," the official defendants assert, "all claims in the complaint arising from the alleged funding and promoting of a competing radio show and arising from that alleged act of retaliation should be dismissed" on statute-of-limitations grounds. [*Id.* at 9]

Strader acknowledges that some of the alleged actions occurred outside the one-year limitations period but urges that the continuing-violation doctrine saves his claims. [*See* Record No. 13, p. 26-28; Record No. 14, p. 23-25] The continuing-violation doctrine applies where: (1) the defendants' wrongful conduct continues after the initial violation; (2) the plaintiff's injury likewise continues to accrue; and (3) further injury could have been avoided "if the defendants had at any time ceased their wrongful conduct." *Eidson v. Tenn. Dep't of Children's Servs.*, 510

F.3d 631, 635 (6th Cir. 2007) (quoting *Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999)). "Continuing violation" means "continual unlawful acts, not continual ill effects from an original violation." *Id.* (quoting *Tolbert*, 172 F.3d at 940). Furthermore, "passive inaction does not support a continuing violation theory." *Id.* Finally, even if the doctrine applies, the plaintiff may only recover damages incurred during the limitations period. *See Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516, 523 (6th Cir. 1997) ("[J]ust as a new injury was allegedly inflicted on [the plaintiff] each day that [an invalid law] was in effect, a new limitations period began to run each day as to that day's damage." (internal quotation marks omitted)).

### 1.      Continuing Wrongful Conduct

The Complaint describes a series of events – beginning with the alleged meeting between Strader and Gassett – that suggest a pattern of reprisals against Strader for his criticism of KDFWR. Although the official defendants attempt to frame their conduct as "passive inaction" that would not fall under the continuing-violation doctrine, in fact Strader alleges several affirmative acts: "funding and promoting a competing radio show"; "sponsoring, advertising, promoting and participating in a competing hunting and fishing expo"; "orchestrating a continuing campaign to harass and disparage Mr. Strader"; "encouraging KDFWR's employees and sportsmen of the Commonwealth not to support Mr. Strader's Expo." [Record No. 1, p. 15, ¶¶ 86-87, 89; *id.*, p. 21 ¶ 125]  In other words, Strader complains not merely that the defendants withdrew their support for his radio show and Expo, but that they actively endeavored to harm him.  As set forth in the Complaint, their efforts continued throughout the one-year limitations

period and to the present day. Thus, Strader sufficiently alleges continuing wrongful conduct with respect to his Count One retaliation claim.

Strader's claims of unconstitutional conditions, on the other hand, arise out of a single incident: the alleged threat made by Gassett during a meeting with Strader sometime prior to March 2008. Consequently, those claims — Count Two and the final allegation of wrongdoing in Count One — are barred by the statute of limitations. [*See* Record No. 1, p. 16, ¶ 90; *id.*, p. 17-18, ¶¶ 100-04] Strader's claim in Count Four that the "[d]efendant[s] deprived [him] of his constitutionally protected property interests by attaching an unconstitutional precondition to his continuing enjoyment of those property interests" must likewise be dismissed on this ground. [*Id.*, p. 22, ¶ 128]

## 2.    Continuously Accruing Injury

According to the official defendants, Strader alleges no injury, much less continuously accruing injury. [*See* Record No. 15, p. 13] They assert that, at most, he can claim only "continual ill effects from an original violation." [Record No. 15, p. 13 (quoting *Eidson*, 510 F.3d at 635)] However, Strader does allege continuing injury as a result of the defendants' actions. [*See* Record No. 1, p. 16 ¶ 93] And it is plausible that the defendants' continued promotion of a competing radio show and expo would cause continuous injury to Strader by luring away listeners, attendees, advertisers, and vendors, thereby reducing Strader's revenue and making future expos economically infeasible, as alleged. [*See id.*, p. 11 ¶¶ 67-68; *see also id.*, p. 10 ¶¶ 58, 60] The second prong of the continuing-violation test is therefore satisfied with respect to these claims.

### 3.    Further Injury Could Have Been Avoided

The defendants do not address the third element of the test (i.e., whether further injury could have been avoided). However, it is logical to assume that if at any time the defendants had ceased competing with Strader, he would have stopped losing listeners and advertisers and perhaps could have revived the Strader Expo. The continuing-violation doctrine thus prevents dismissal of Strader's remaining § 1983 claims on statute-of-limitations grounds.[1] Strader may not recover damages for any alleged wrongdoing that took place outside the one-year limitations period, however. *See Kuhnle Bros.*, 103 F.3d at 523.

### D.    First Amendment (Count One)

To evaluate Strader's Complaint under *Iqbal* and *Twombly*, the Court must first identify the elements of each claim. *See Iqbal*, 129 S. Ct. at 1947. A claim under § 1983 consists of two elements: "(1) the defendant was acting under color of state law, and (2) the offending conduct deprived the plaintiff of rights secured under federal law." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005) (citing *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998)). Here, the first element is uncontested. [*See* Record No. 5, p. 7; Record No. 6-2, p. 16] The dispute centers instead on the second prong, which, in a retaliation case, has three sub-elements: "(1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct." *Mezibov*, 411 F.3d at 717 (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)).

---

1    The Court here refers to those portions of Counts One through Five which have not already been found to be barred by Eleventh Amendment or qualified immunity or by the statute of limitations.

## 1.    Constitutionally Protected Conduct

Count One alleges that the defendants retaliated against Strader for "reporting upon KDFWR's questionable policies and practices."  [Record No. 1, p. 15-16, ¶¶ 86-89]  The Complaint outlines various instances in which Strader was critical of KDFWR and Gassett. [*See* Record No. 1, p. 6-8, ¶¶ 35-45 (describing Strader's investigation and reporting of KDFWR improprieties involving the Elk Restoration Project and qualifications of a Fish and Wildlife Commission nominee); *id.*, p. 9, ¶ 50-56 (describing Strader's investigation and reporting of Telecheck entries that he believed contained false information)]  Criticism of public officials is protected by the First Amendment.  *See Bloch*, 156 F.3d at 678.  Count One therefore satisfies the first element of the retaliation test.  *See Mezibov*, 411 F.3d at 717.

## 2.    Adverse Action

The official defendants contest more vigorously the adverse-action element.[2]  First, they assert that their actions amounted to nothing more than the exercise of "their own First Amendment rights to respond or not to respond to criticism, to speak or not to speak with whomever they choose for whatever reasons they choose, and to associate or not to associate with whomever they choose for whatever reasons they choose."  [Record No. 6-2, p. 13]  This argument was addressed previously in the Court's discussion of qualified immunity, and parts of Strader's retaliation claim have already been eliminated on this ground.  The Court therefore turns to the remaining alleged acts of retaliation: "funding and promoting a competing radio show in an effort to deprive Mr. Strader of his livelihood"; "sponsoring, advertising, promoting

---

2       Gassett makes no argument with respect to the second and third elements of the retaliation test.

and participating in a competing hunting and fishing expo in an effort to deprive Mr. Strader of his livelihood"; and "orchestrating a continuing campaign to harass and disparage Mr. Strader." [*Id.*, p. 15-16]

The official defendants maintain that, even if there was adverse action, it did not have the necessary chilling effect. They point out that Strader "continues to speak his mind on his radio show." [Record No. 6-2, p. 15] Therefore, they argue, Strader "has demonstrated that the retaliation that he alleges has not deterred him from speaking, nor would a reasonable mind see the facts he has alleged . . . as the kind of adverse action that would chill a person of ordinary firmness." [*Id.*, p. 15-16] This argument is unavailing. It is well-established that "actual deterrence on the part of the plaintiff is not necessary to state a claim of an adverse action." *Fritz*, 592 F.3d at 728 (citing *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002)). Instead, the proper inquiry is whether the defendants' actions would deter an investigative journalist of ordinary firmness from exercising his First Amendment rights. *See Fritz*, 592 F.3d at 724 (explaining that the adverse-action element must be measured by reference to the plaintiff's position).

Strader alleges that the defendants' acts of funding and promoting a competing radio show and expo were intended "to deprive [him] of his livelihood." [Record No. 1, p. 15 ¶¶ 86-87] The Sixth Circuit recently affirmed that a threat to one's economic livelihood is sufficient harm to support a First Amendment retaliation claim. *See Fritz*, 592 F.3d at 728. Strader's livelihood is dependent upon his radio show and the Expo [Record No. 1, p. 5 ¶ 25], and he alleges injury to his livelihood as a result of the defendants' actions. [*See id.*, p. 10 ¶ 60, p. 11

¶¶ 67-68] *Cf. Mezibov*, 411 F.3d at 722 (finding no adverse action where the plaintiff, a criminal defense attorney, alleged "only a generalized harm to his character and reputation" (citing *Mattox v. City of Forest Park*, 183 F.3d 515, 521-22 (6th Cir. 1999))). It is plausible that the defendants' backing of a competing radio show and expo would harm Strader economically by diverting listeners and attendees (and, consequently, advertisers and vendors). A threat to one's primary sources of income would deter a person of ordinary firmness, including an investigative journalist, from exercising his First Amendment rights.

Strader's allegation that the defendants retaliated against him by "orchestrating a continuing campaign to harass and disparage" him, on the other hand, does not satisfy the adverse-action prong. An investigative journalist who deliberately injects himself into debate on contentious topics — or who initiates such debate himself — is expected to have "thicker skin than the ordinary citizen." *Mattox*, 183 F.3d at 522. Harassment and disparagement, while improper, would not deter an investigative journalist of ordinary firmness from criticizing public officials. The action alleged in paragraph 89 of the Complaint thus cannot support Strader's retaliation claim.

### 3.     Motivated by Protected Conduct

Neither Gassett nor the official defendants dispute that their actions were motivated by Strader's reporting, and the factual allegations are sufficient to satisfy this element of the test. As set forth in the Complaint, the alleged retaliation began after Gassett threatened to discontinue KDFWR's "support" of Strader's Expo and radio show unless Strader ceased his criticism of the agency. [Record No. 1, p. 8, ¶ 48] When Strader did not acquiesce, according

to the Complaint, the agency launched a competing radio show that aired at precisely the same time as Strader's. [*Id.*, p. 9-10 ¶¶ 57-58] Strader further alleges that Gassett publicly expressed a desire to "get rid of him." [*Id.*, p. 10, ¶ 61] Taken as true, these allegations plausibly support a conclusion that the defendants' actions were motivated by Strader's criticism of KDFWR. In summary, to the extent they are based on the defendants' promotion of a competing expo and radio show, the plaintiff's retaliation claims survive the motions to dismiss.

### E.    Equal Protection (Count Three)

In Count Three, Strader alleges that the defendants violated his right to equal protection under the Fourteenth Amendment by "impermissibly singl[ing] [him] out . . . for adverse disparate treatment by KDFWR, it[s] officials and employees." [Record No. 1, p. 19-20 ¶¶ 113, 115] His equal protection claims are based on the same factual allegations as his claims of retaliation; namely, the defendants' prohibiting KDFWR employees from participating in his radio show and Expo. [*See id.*]

The Equal Protection Clause prohibits states from "mak[ing] distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." *Radvansky*, 395 F.3d at 312 (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)). Strader does not claim to be a member of a suspect class, nor does he allege in Count Three that the defendants' disparate treatment of him burdened a fundamental right.[3] [*See* Record No. 1, p. 19-

---

3    In his response to the official defendants' motion to dismiss, Strader expresses surprise at their suggestion that he asserts no violation of a fundamental right. [*See* Record No. 14, p. 21; *see also* Record No. 6-2, p. 19] However, although Count Three incorporates by reference all preceding paragraphs of the Complaint, it makes no mention of Strader's First Amendment rights or any burden the defendants' actions

21 ¶¶ 109-22]  And as the official defendants point out, certain discretionary acts are not subject to even rational-basis review.  The Supreme Court has held that state actions "which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments" do not violate equal protection even when they result in disparate treatment of similarly situated individuals.  *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 603 (2008).  In this case, the Court has already determined that the alleged actions underlying Count Three — i.e., ceasing participation in Strader's radio show and Expo — constituted a permissible exercise of the defendants' own First Amendment rights.  The decision to discontinue KDFWR's support for those ventures in response to Strader's criticism of the agency was a discretionary one and is not subject to challenge on equal protection grounds.  *See id.*  As a result, Count Three will be dismissed.

### F.    Procedural Due Process – Property Interests (Count Four)

Strader next alleges that the defendants violated his procedural due process rights by depriving him of his "constitutionally protected property interest in his continued right to contract free from governmental interference and in his means of livelihood and continued employment" without a hearing.  [Record No. 1, p. 21 ¶ 124]  This claim, like those contained in the first three counts, arises out of the defendants' refusal to participate in the Strader Expo and their promotion of a competing expo and radio show.  [*See id.*, p. 21-22 ¶¶ 125-26]  Count

---

allegedly imposed on those rights.  [*See* Record No. 1, p. 19-21 ¶¶ 109-22]  Instead, Strader alleges that the defendants treated him differently from similarly situated radio shows and expos "for the impermissible purpose of harming him economically by placing him at a commercial disadvantage."  [*Id.*, p. 20 ¶ 117]

Four further alleges that the defendants "encourag[ed] KDFWR's employees and sportsmen of the Commonwealth not to support Strader's expo." [*Id.* ¶ 125]

To establish a violation of his procedural due process rights, Strader must show : "(1) that [he] ha[s] a life, liberty, or property interest protected by the Due Process Clause . . . ; (2) that [he] w[as] deprived of this protected interest within the meaning of the Due Process Clause; and (3) that the state did not afford [him] adequate procedural rights prior to depriving [him] of [his] protected interest." *Med. Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002). The Constitution itself does not give rise to property interests; rather, it merely "affords procedural due process to protect rights that arise from other sources, such as state law." *Mertik v. Blalock*, 983 F.2d 1353, 1360 (6th Cir. 1993).

Count Four suffers from a number of flaws. First, Strader does not adequately assert that he had any property interest in "continued employment." He is not a public employee and cannot show "a legitimate claim of entitlement" to continued employment arising from state law or any other source. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Even if he did sufficiently allege such a right, he does not allege a deprivation, since there is no indication that his employment was even terminated.[4] Strader's allegation that the defendants interfered with his right to contract is likewise fatally flawed, as he identifies no contracts that were affected by the defendants' actions. *Cf. Mertik*, 983 F.2d at 1360-61 (finding that plaintiff had sufficiently alleged the existence of valid contracts and rights arising under them). Finally, although Strader alleges that the defendants deprived him of a property right in his means of livelihood, "[n]ot all

_____

4        To the contrary, Strader acknowledges in his Complaint that he is still employed as a radio host on Louisville station 840 WHAS-AM. [*See* Record No. 1, p. 4 ¶¶ 21-22]

cases in which a plaintiff's 'means of livelihood' are negatively affected will implicate protected property interests." *Id.* at 1361. Rather, "[r]ecognized property rights must be abridged before a federal due process claim will lie." *Id.* As with his allegation regarding his right to continued employment, Strader fails to identify the source of his alleged property right in his means of livelihood. Consequently, Count Four will be dismissed.

### G.    Procedural Due Process – Liberty Interests (Count Five)

In Count Five, Strader alleges that the defendants deprived him of his "liberty interest in maintaining his means of livelihood, continued employment, his good name and reputation free from false, stigmatizing, and defamatory statements or statements causing him professional and/or personal harm." [Record No. 1, p. 23 ¶ 134] A plaintiff who alleges deprivation of a liberty interest based on an injury to his reputation or good name must show that: (1) "the allegedly stigmatizing statements [were] made in connection with the loss of a governmental right, benefit, or entitlement"; (2) "the defendant made defamatory statements that would foreclose his freedom to take advantage of other employment opportunities"; (3) the statements were made public; (4) the charges against him were false; and (5) the public dissemination was voluntary. *Med. Corp.*, 296 F.3d at 414 (citations and internal quotation marks omitted). In other words, "[t]he Fourteenth Amendment does not transform all tort-law defamation claims against the state into constitutional violations." *Id.*

Presumably, the alleged "defamatory statements" that form the basis of this claim are the same statements underlying Strader's defamation claim in Count Six, although he does not plead as much. [*See* Record No. 1, p. 23 ¶ 135] Even giving Strader the benefit of this assumption,

however, the Court cannot find that he has plausibly alleged that Gassett's statements in the Commissioner's Newsletter were "made in connection with the loss of a governmental right, benefit, or entitlement" or "would foreclose [Strader's] freedom to take advantage of other employment opportunities." *Med. Corp.*, 296 F.3d at 414. Thus, Strader's second due process claim will be dismissed.

## H. Defamation (Count Six)

To make a prima facie of defamation under Kentucky law, a plaintiff must prove the following four elements: "[1] defamatory language [2] about the plaintiff [3] which is published and [4] which causes injury to reputation." *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 793 (Ky. 2004). Defamatory language is "language that 'tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" *Id.* (quoting Restatement (Second) of Torts § 559 (1977)). More specifically, "[a] writing is defamatory if it tends to (1) bring a person into public hatred, contempt or ridicule; (2) cause him to be shunned or avoided; or (3) injure him in his business or occupation." *McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 884 (Ky. 1981). In addition to these four elements, a plaintiff who is a public figure must show that the allegedly defamatory statement was made with actual malice, *i.e.*, "'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Welch v. Am. Publ'g Co. of Ky.*, 3 S.W.3d 724, 727 (Ky. 1999) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964)).

Gassett first asserts that Strader fails to state a valid defamation claim because the Complaint does not specify what statement was allegedly defamatory. [Record No. 5, p. 17-18] While Strader did not identify in his Complaint precisely which of Gassett's statements he believed to be defamatory, given that only two sentences of the seven-paragraph letter contain statements about Strader, it is logical to assume that those statements form the basis of his defamation claim. [*See* Record No. 1-6, p. 2 ("Recently Mr. Strader publicly maligned hard-working department professionals. He questioned their integrity by accusing them of fabricating deer kill data . . . .)] In his response, Strader confirms that the alleged defamation is "Gassett's . . . statement that Mr. Strader maligned KDFWR employees 'by accusing them of fabricating deer kill data in defense of Telecheck.'" [Record No. 13, p. 24 (quoting Kentucky Fish & Wildlife Commissioner's Newsletter, Feb. 2009)]

The initial inquiry, then, is whether that statement is defamatory — i.e., whether it would "tend[] to (1) bring [Strader] into public hatred, contempt or ridicule; (2) cause him to be shunned or avoided; or (3) injure him in his business or occupation." *McCall*, 623 S.W.2d at 884. Although this presents a close question, the Court finds it plausible that Gassett's statement could damage Strader's reputation, as alleged in the Complaint.

Gassett next contends that he cannot be liable for defamation because his statement that Strader had publicly maligned KDFWR officials is true. "[T]ruth is a complete defense" to defamation. *Stringer*, 151 S.W.3d at 795 (quotation omitted). It is the defendant's burden to prove that the statement in question was true. *Id.* at 796. Gassett asserts that the statement is supported by facts alleged in the Complaint. [*See* Record No. 5, p. 18-19] That Strader spoke

ill of KDFWR officials is undisputed; however, the Complaint does not corroborate (nor does Gassett's argument address) that Strader maligned the officials "by accusing them of fabricating deer kill data in defense of Telecheck." [Record No. 1-6, p. 2] Rather, as set forth in the Complaint, Strader criticized KDFWR's use of Telecheck because he believed that the system was too easy for poachers to manipulate — i.e., that the self-reporting system allowed hunters to enter false information. [*See* Record No. 1, p. 9 ¶¶ 50-56] Nothing in the Complaint suggests that Strader accused KDFWR officials of fabricating data. Thus, Gassett is not entitled to dismissal of the defamation claim on the ground that his statement was true.

Gassett's next argument – that his statement was an expression of opinion and thus not actionable – likewise fails. He is incorrect that "[t]o say that someone has maligned another is clearly a statement of opinion" [Record No. 5, p. 18; *see also* Record No. 16, p. 8], and the case he cites, *Biber v. Duplicator Sales & Serv.*, 155 S.W.3d 732 (Ky. App. 2004), involved comments completely dissimilar to the ones at issue here. In *Biber*, the court concluded that the defendant's reference to the plaintiff as a "con man" was "an opinion based on the facts admitted." *Id.* at 738. The comment at issue was that the defendant "felt like he had been conned by the world's greatest con man." *Id.* at 737. Here, by contrast, the statement was an affirmative, unqualified assertion of fact: Strader maligned KDFWR officials; he accused them of fabricating data. The statement, therefore, is not a protected opinion, notwithstanding Gassett's insistence to the contrary.

The second and third elements of the *Stringer* test are easily satisfied, as the statement at issue was clearly about Strader and was published in the Commissioner's Newsletter. *See* 151

S.W.3d at 793. Furthermore, Strader alleges injury to his reputation, both "as a reporter on outdoors issues and [as a] sponsor [of] hunting and fishing activities, programs and events." [Record No. 1, p. 24 ¶ 143] *See Stringer*, 151 S.W.3d at 793. As discussed above, it is plausible that such injury could occur as a result of Gassett's statement. Finally, Strader alleges that Gassett made the statement with actual malice. [*Id.* ¶ 142] This claim therefore survives Gassett's motion to dismiss.

## I. Intentional Interference with Prospective Contractual Relations (Count Seven)

Strader's final claim is for intentional interference with prospective contractual relations. [*See* Record No. 1, p. 25] He may have abandoned this claim, as his response to Gassett's motion to dismiss contains no mention of it. [*See* Record No. 13] In any event, the Court agrees that Count Seven should be dismissed.

Kentucky follows § 766B of the Restatement (Second) of Torts, which provides:

> One who intentionally and improperly interferes with another's prospective contractual relation . . . is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation.

*See Nat'l Collegiate Athletic Ass'n v. Hornung*, 754 S.W.2d 855, 857 (Ky. 1988) (adopting § 766B). A plaintiff who seeks to recover on such a claim "must plead and prove the following elements: (1) the existence of a valid business relationship or its expectancy; (2) a defendant's knowledge thereof[;] (3) an intentional act of interference; (4) an improper motive; (5) causation;

and (6) special damages." *CMI, Inc. v. Intoximeters, Inc.*, 918 F. Supp. 1068, 1080 (W.D. Ky. 1995).

In this case, Strader makes only a broad, vague reference to the prospective business relationships that were allegedly harmed: "Defendants have intentionally and improperly interfered with Plaintiff's prospective contractual relations with both potential vendors and attendees of the Strader Expo and with sponsors of Outdoors with Jim Strader radio program." [Record No. 1, p. 25]  Furthermore, Strader implies – but does not allege – that Gassett had knowledge of those prospective contracts.  [*See id.*]  Because he does not identify any actual business relationships that were affected by Gassett's actions, Strader does not state a plausible claim of intentional interference with prospective contractual relations.  Therefore, Count Seven will also be dismissed.

### III.     CONCLUSION

The bulk of Strader's Complaint cannot survive the defendants' motions to dismiss. However, Strader does state plausible claims of retaliation and defamation.  Accordingly, it is hereby

**ORDERED** as follows:

(1)     The Motion to Dismiss by Defendant Jonathan W. Gassett in his individual capacity [Record No. 5] is **GRANTED** with respect to Counts Two, Three, Four, Five, and Seven; the allegations contained in paragraphs 88-90 of Count One; and all claims under the Kentucky Constitution.  The motion is **DENIED** with respect to the remainder of Count One and Count Six.

(2)     The Motion to Dismiss by Defendants Department of Fish and Wildlife Resources and Jonathan W. Gassett and John Does 1-10 in their official capacities [Record No. 6] is **GRANTED** as to the Kentucky Department of Fish and Wildlife Resources.  As to the remaining defendants, the motion is **GRANTED** with respect to Counts Two, Three, Four, Five, Six, and Seven; the allegations set forth in paragraphs 88-90 of Count One; and all claims under the Kentucky Constitution.  The motion is **DENIED** with respect to the remainder of Count One, to the extent Strader seeks prospective injunctive relief.

This 19th day of January, 2011.

Signed By:

*Danny C. Reeves*

**United States District Judge**